**PAUL BATISTA, P.C.**
Attorney-at-Law
26 Broadway – Suite 1900
New York, New York 10004
(212) 980-0070

e-mail: Batista007@aol.com                                          Facsimile: (212) 344-7677

May 4, 2016

VIA ELECTRONIC MAIL AND ECF

Honorable Andrew L. Carter, Jr.
United States District Judge
  for the Southern District of New York
500 Pearl Street, Room 725
New York, NY 10007

>   Re:   *Bernard Gelb* v. *Federal Reserve Bank of New York*,
>         **12-cv-4880 (ALC)**

Dear Judge Carter:

    I represent plaintiff Bernard Gelb. Consistent with the Court's April 13, 2016 Order, I write to provide a brief response to the letter dated April 27, 2016 from counsel to the Federal Reserve Bank of New York ("FRBNY").

    On November 30, 2015, Mr. Gelb, as he has done repeatedly and to no avail over a fifteen year period, filed a request under the Freedom of Information Act ("FOIA") with FRBNY for a search of the 25-year "backup" archives for registered United States Treasury securities, U.S. Government agencies' securities, and other securities in the New York and New Jersey FRBNY offices responsive to his repeated FOIA requests.

    In a remarkable exercise of Orwellian fantasy, Mr. Gross, as defendant's attorney, has incorrectly asserted that Mr. Gelb "has received all the information he sought in the lawsuit and more."

    No statement could be further from the truth. Mr. Gelb never requested production of scant amounts of inadequate and worthless records. In this context, there is no basis for Mr. Gross's throwaway assertion that Mr. Gelb's claims are moot.

    Mr. Gross is equally wrong concerning the "close" relationship issue delineated in this Court's recent Order. *See* Gross letter at 4. Mr. Gross does not address the fact that, in *LePelletier* v. *F.D.I.C.*, 164 F.3d 37, 43 (D.C. Cir. 1999), the Court made the obvious, common sense observation that the "reason for the 'close relationship' factor is to ensure that the plaintiff will act as an effective advocate for the third party." Frankly, it is ludicrous for Mr. Gross to suggest that the missing securityholders can "advocate" their own rights since, by definition given FRBNY's admitted refusal to provide written notice to them, the third parties are totally unaware that they have rights. In contrast, Mr. Gelb is, and from the outset has been, deeply engaged in the bond owners' welfare and the recovery of money to which they are entitled.

Honorable Andrew L. Carter, Jr.
May 4, 2016
Page 2

Indeed, the extent of Mr. Gelb's alignment with the interests of securityholders is underscored by an agreement he has with a charitable entity, the Lutheran Church-Missouri Synod Foundation ("LCMS"), to recover $250,000 in unclaimed bond funds held by FRBNY. Significantly, the FRBNY on September 23, 1998 confirmed in writing that the $250,000 "appears to be listed on FRBNY's books as currently outstanding." *See* annexed Exhibit 1. Moreover, as Exhibit 1 confirms, the LCMS expressly acknowledged in writing that "Bernard Gelb . . . [has] been authorized to facilitate the recovery of this claim."

Another point merits emphasis. Notwithstanding Mr. Gross's failure to acknowledge reality, Mr. Gelb enjoys a close relationship with missing securityholders since he, too, has undeniably suffered direct injuries, and continues to sustain them, as a result of defendant's actions. Mr. Gelb has every right, as the LCMS situation substantiates, to "pursue an economic benefit and advantage and [re-unite] owners with their lost or forgotten property for a fee." *New York Pathological and X-Ray Laboratories, Inc.* v. *Immigration and Naturalization Service*, 523 F.2d 79, 81-82 n. 5 (2d Cir. 1975). And, as *LePelletier* more recently underscores, the loss of a business opportunity satisfies the injury requirement of the Article III standing analysis even when asserted for third parties. *LePelletier*, 164 F.3d at 42.

While Mr. Gross concedes, as he must, that the plaintiff in *LePelletier*, as "an independent money finder" – exactly the role of Mr. Gelb – had "standing to assert a Due Process claim on behalf of . . . depositors with unclaimed funds" (*see* Gross letter at 3 n. 5), Mr. Gross failed to follow the path that the *LePelletier* action took *after* the District of Columbia's Circuit's decision. In point of fact, the District Court provided LePelletier with a list of all depositors with unclaimed funds held by the FDIC. *LePelletier* v. *FDIC,* Civ. No. 96-1363 (JR) (D.D.C. March 3, 2000).

Furthermore, the outcome in *LePelletier* is not unique. Other federal appellate courts and district courts have ordered agencies to disclose to people such as Mr. Gelb the names and addresses of unclaimed funds' owners to independent money-finders. *See, e.g., Aronson* v. *Department of Housing and Urban Development*, 822 F.2d 182, 186 (1st Cir. 1987); *Aronson* v. *Internal Revenue Service*, 767 F.Supp. 378, 388 (D. Mass. 1991) (requiring the IRS to provide an independent money-finder with the last known street addresses of persons to whom the IRS owed tax refunds); *Farnum* v. *Department of Housing and Urban Development*, 710 F.Supp. 1129, 1133-36 (E.D. Mich. 1988).

Contrary to the Gross letter's assertions, the Supreme Court's decision in *Kowalski* v. *Tesmer*, 543 U.S. 125, 127-28 (2004), is readily distinguishable from Mr. Gelb's action. *Kowalski* emphasized whether the real owners faced hindrances from the asserting their own Due Process rights. To say that, in Mr. Gelb's action, there are "hindrances" to the actual owners' vindication of their own rights is gross understatement. Without Mr. Gelb's assistance on their behalf, the real owners face an insurmountable hindrance to assertion of their rights. Because of FRBNY's admitted failure to provide them with Constitutionally mandated Due Process notice, coupled with the FRBNY's utter refusal to abide by the notice requirement of the SEC's rules on notice to "lost security-holders," it is ludicrous – or at best patently disingenuous – for FRBNY

to suggest that, in the terms of *Kowalski*, the real owners do not face "hindrances" to the assertion of rights they do not even know they have without Mr. Gelb's intervention.[1]

### Conclusion

For the reasons articulated in this supplemental letter as well as in Mr. Gelb's earlier submissions, we respectfully submit that Mr. Gelb has both Article III standing and Article III "prudential" standing to vindicate the Due Process rights of unknown individual securityholders — "unknown," that is, to everyone but FRBNY itself.

Respectfully submitted,

Paul Batista

PB/wg

cc: David Gross, Esq.
All Parties on Service List

---

[1] Also germane to the standing issues raised by this Court's Order are *DLX, Inc. v. Kentucky*, 381 F.3d 511, 527 (6th Cir. 2004) ("[T]he Constitution mandates the availability of effective remedies for 'takings' . . . and accordingly requires courts to provide those remedies." *See also Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C.Cir. 1991). And, in *Jones v. Flowers*, 547 U.S. 220, 230, 126 S.Ct. 1708 (2006), the Supreme Court reiterated that publication notice alone is acceptable only when other measures are unavailable – for example, where there is no viable way to obtain someone's address. Mr. Gelb has a demonstrated track record of finding owners and notifying them by mail of their rights.