UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

BERNARD GELB,                                  :

                              Plaintiff,       :

              -against-                         :

FEDERAL RESERVE BANK OF NEW                    :
YORK, et al.                                    :

                              Defendants.       :

------------------------------------------------------------ x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 7/29/16

1:12-cv-4880 (ALC)

Opinion and Order

ANDREW L. CARTER, JR., United States District Judge:

Plaintiff Bernard Gelb filed this action against the Federal Reserve Bank of New York

("FRBNY"), seeking certain records under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, as amended, and alleging that FRBNY violated his constitutional rights under the Fifth

Amendment, as well as the Fifth Amendment rights of non-party owners of outstanding bonds in

FRBNY's possession (the "Owners"). The Court previously granted summary judgment to

FRBNY on Gelb's FOIA claims, as well as Gelb's claims that his own Fifth Amendment rights

had been violated, leaving only the claim that the Owners' Fifth Amendment Rights had been

violated. The Court now considers whether Gelb has standing raise that claim and finds that he

does not. Accordingly, this action is dismissed in full.

## BACKGROUND

### I.      Factual Background

The facts underlying this action are more thoroughly recounted in the Court's September

17, 2015, Decision. (*See* Sept. 17, 2015, Decision, ECF No. 83.)

As relevant here, Gelb is the vice president of Unclaimed Property Recovery Service,

Inc., a business that, for a fee, locates and retrieves lost or forgotten property for individuals and

entities. (Gelb Decl., ECF No. 77, ¶ 5.) Defendant is one of twelve regional banks in the Federal

Reserve System, the central bank of the United States.  (Def.'s Mem. Summ. J., ECF No. 67.)

On March 15, 2010, Gelb submitted to FRBNY a request for a complete listing of all

"Registered Securities" and "Book-Entry Securities" that "remain[] unclaimed or undistributed at

the end of one year after the principal or interest is due and payable." (Exh. 5, Gelb Decl.) Gelb

contends that these records would "reflect bonds worth millions of dollars belonging to the

owners (the 'Owners') of the outstanding bonds (the 'Unclaimed Property')." (Compl, ECF No.

1, ¶ 24.)

According to Gelb, a regulation adopted by the Securities and Exchange Commission

requires "custodians of securityholder records like the defendants to conduct two searches and

send two notices to outstanding securityholders in an effort to locate lost securityholders," but

"the FRBNY . . . as custodians of securityholder Bond Loan Records[] neither conducted the

searches nor sent two notices to outstanding securityholders in an effort to locate lost

securityholders," nor did it "file information with the SEC about lost securityholders." (Compl.

¶¶ 27-30.) As a result of FRBNY's failure to send notice to Owners, Gelb alleges, "Owners and

their heirs for several decades years [sic] have been unaware that their property is outstanding

and could be recovered." (Compl. ¶ 33.)

## II.    Procedural Background

Gelb initiated this action against the FRBNY on June 21, 2016.[1] (*See* Compl.) He alleged

three "counts": (1) FRBNY failed to make requested records "promptly available" in violation of

FOIA; (2) FRBNY failed to conduct an adequate search and failed to produce documents within

its possession to which Gelb was entitled to under FOIA; and (3) FRBNY violated the

---

[1] Gelb also brought claims against the Board of Governors of the Federal Reserve System, but the claims against the Board were dismissed for insufficient service of process. (*See* July 19, 2013, Decision, ECF No. 43.)

constitutional rights afforded to Gelb and Owners by the Fifth Amendment. As to the constitutional claim, Gelb alleged that FRBNY violated Gelb's own Fifth Amendment due process rights through its "failure to conduct an adequate search in response to plaintiff's FOIA requests, as well as defendant['s] wrongful withholding of records." (Compl. ¶¶ 72-73.) He also alleged that FRBNY violated the Owners' rights, under the Due Process and Takings Clauses of the Fifth Amendment, on the basis that FRBNY's failure to provide notice to the Owners wrongfully deprived the Owners of their property without sufficient notice. (Compl. ¶¶ 26-34, 67-99.)

On September 17, 2015, this Court granted summary judgment to FRBNY on Gelb's FOIA and state-law claims. (Sept. 17, 2015, Order, ECF No. 83.) The Court also granted summary judgment on "any constitutional claims . . . predicated on Defendant's alleged FOIA violations." (Sept. 17, 2015, Order 20.) Thus, the claim asserting that FRBNY had violated Gelb's *own* constitutional rights was dismissed, as that claim was predicated on "Defendant['s] failure to conduct an adequate search in response to plaintiff's FOIA requests, as well as [D]efendant['s] wrongful withholding or records . . ." (Compl. ¶ 72.) However, the constitutional claim predicated on failure to provide notice to Owners survived, as FRBNY did not seek summary judgment on the claim. (Sept. 17, 2015, Decision 20 n. 11.) On November 6, 2015, after a status conference with the parties, the Court issued an order to show cause as to why the remaining claim should not be dismissed for lack of standing. (ECF No. 86.) The parties responded in writing and at a status conference held April 13, 2016. (ECF Nos. 87-89, 94-97.)

## LEGAL STANDARD

Under Article III of the U.S. Constitution, in order to bring a case in federal court, plaintiffs must establish that they have standing to sue. *Keepers, Inc. v. City of Milford*, 807 F.3d

24, 38 (2d Cir. 2015) (citing *Clapper v. Amnesty Int'l* USA, 133 S.Ct. 1138, 1146 (2013)). To establish Article III standing, a plaintiff must demonstrate: "(1) an injury-in-fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that can likely be redressed by a favorable decision." *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"In addition to these core constitutional requirements, litigants must also satisfy 'prudential standing,' which "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Keepers, Inc.*, 807 F.3d at 38 (citation omitted). Among other restraints, "[p]rudential standing includes . . . the general prohibition on a litigant's raising another person's legal rights." *Id.* (citation and internal quotation marks omitted). "Typically, a plaintiff who asserts the claims of a third party can obtain standing by establishing (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *Id.* (quoting *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015)). Failure to establish any of these prongs is fatal. *See, e.g.., Fenstermaker v. Obama*, 354 F. App'x 452, 454-55 (2d Cir. 2009). While the Supreme Court has not been entirely consistent in its application of the third-party standing doctrine, as a general matter, it has "not looked favorably upon third-party standing."[2] *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

"The party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing . . ." *Keepers, Inc.*, 807 F.3d at 38 (citing *Lujan*, 504 U.S. at 561).

---

[2] In *Kowalski*, the Supreme Court noted that it had been "quite forgiving" of the requirements of third-party standing in two circumstances: first, "[w]ithin the context of the First Amendment . . . the Court has enunciated other concerns that justify a lessening of prudential limitations on standing," *Kowalski*, 543 U.S. at 130 (quoting *Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984)) (internal quotation marks omitted); and second, "in several cases, this Court has allowed standing to litigate the rights of third parties when enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 510 (1975) (alterations and internal quotation marks omitted) (emphasis in original)). Neither of these exceptions is implicated here.

4

However, courts may raise the issue *sua sponte* at any point in the litigation. *Id.* (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)). Courts may consider constitutional standing and prudential standing in any order. *Id.* at 38 n. 77.

## DISCUSSION

As his only surviving claim, Gelb asserts a constitutional claim on behalf of the Owners, alleging that they did not receive sufficient notice of the taking of their property. For this action to survive, then, Gelb must satisfy not only constitutional standing requirements but also the third-party standing prudential standing requirements. Gelb fails to satisfy the requirements of either standing doctrine, as first, he does not establish that he has a close relationship to the injured party, and second, he does not establish the redressability of the alleged injury.[3]

### I.    Gelb's Relationship to the Third Parties

"A close relation supporting third-party standing exists when 'the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Fenstermaker*, 354 F. App'x at 455 (2d Cir. 2009) (quoting *Singleton v. Wulff*, 428 U.S. 106, 115 (1976)). The Supreme Court has in the past allowed that a vendor-customer relationship is sufficiently close to satisfy this "close relationship" requirement. *See, e.g., Craig v. Boren*, 429 U.S. 678 (1977) (beer vendor may challenge on behalf of customers a statute restricting the rights of men between the ages of 18 and 21 to purchase beer); *Carey v. Population Serv. Int'l*, 431 U.S. 678, 682-85 (1977) (business selling contraceptive devices may assert right of customers to purchase items).

---

[3] Because Gelb does not establish the "close relationship" required for third-party standing or the redressability prong of Article III standing, the Court does not address the other elements of Article III standing (injury-in-fact and causation) or of third-party standing (a hindrance to the third party asserting its own rights).

More recently, in *Kowalski v. Tesmer*, 543 U.S. 125 (2004), the Court distinguished between "*existing*" relationships and "*hypothetical*" relationships. *Id.* at 131 (emphasis in original). In *Kowalski*, a group of attorneys attempted to challenge a statute on behalf of "yet unascertained [indigent criminal defendants] who will request, but be denied, the appointment of appellate counsel, based on the operation of the statute." *Id.* at 130 (internal quotation marks omitted). The Court rejected this attempt, noting, "The attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all." *Id.* In the wake of the *Kowalski* decision, the Second Circuit too has found that third-party standing is foreclosed where the plaintiff "allege[s] only that he might establish an attorney-client relationship . . . in the future." *Fenstermaker*, 354 F. App'x at 455; *see also New York Cty. Lawyers' Ass'n v. Bloomberg*, No. 10 Civ. 5035 (DAB), 2011 WL 4444185, at *7 (S.D.N.Y. Sept. 23, 2011) ("A finding that Plaintiffs here have standing to vindicate the rights of *future* clients of their respective members, or of future indigent defendants generally . . . is foreclosed by *Kowalski*.").

Here, Gelb argues that he has third-party standing to assert the rights of the Owners who do not know that FRBNY holds their unclaimed bonds and who may, upon learning that information, retain Gelb to secure the bonds on their behalf.[4] (Def.'s May 2, 2016, Ltr.,. ECF No. 95, 2.) Under the narrower view of what constitutes a "close relationship" laid out in *Kowalski*, this relationship is not sufficient. Whereas an existing relationship between a vendor and a customer may support third-party standing, a "future" or "hypothetical" relationship does not. *See Kowalski*, 543 U.S. at 130-31. The relationship posited here is just as speculative as the

---

[4] Gelb also points to an agreement entered into in 1998, with an entity called the LCMS Foundation, to recover $250,000, which FRBNY confirmed "was listed on FRBNY's books as currently outstanding." (Def.'s Mem. 6; *see also* Exh. 1, Def.'s Ltr.) Given the FRBNY's alleged acknowledgement to the LCMS Foundation that the bond was outstanding, it would seem that any claim this entity might bring—or that Gelb might bring on behalf of this entity—is distinct from Gelb's assertion that the Owners' due process rights have been violated by their lack of notice that FRBNY holds their bonds. Thus, it is not relevant to the surviving claim.

one rejected in *Kowalski*: Gelb relies on a future relationship with yet unascertained customers, who may receive notice that FRBNY holds bonds that belong to them and who may as a result seek out Gelb's services. *See Kowalski*, 543 U.S. at 130 ("Specifically, they rely on a future attorney-client relationship with as yet unascertained Michigan criminal defendants who will request, but be denied, the appointment of appellate counsel, based on the operation of the statute." (internal quotations omitted)). Thus, Gelb's argument that he has the requisite "close relationship" to assert third-party standing is foreclosed by the Supreme Court's decision.

This is so despite Gelb's argument that a 1999 decision by the D.C. Circuit counsels in favor of allowing him to assert third-party standing. In that case, *Lapelletier v. F.D.I.C.*, 164 F.3d 37 (D.C. Cir. 1999), an "independent money finder" sought "the release of the names of depositors with unclaimed funds for which the Federal Deposit Insurance Corporation ('FDIC') is now the receiver." *Id.* at 39. Among other claims, the plaintiff "contended that, under the due process clause of the Fifth Amendment, the FDIC was required to publish the names of all parties with unclaimed funds, along with the precise amounts due to each party . . ." *Id.* Like Gelb, the plaintiff there sought to raise the rights of third parties, the depositors. *Id.* at 42. While allowing that the plaintiff's establishment of the "close relation" factor was "more troubling" than the other third-party standing factors, the Court "nevertheless [found] it satisfied." *Id.* at 43. In reaching that conclusion, the Court noted that the plaintiff did not "even know the names of the depositors," and had "no close and confidential relationship" with them. *Id.* But it read prior caselaw to require only a "'close relation' in the sense that there must be an identity of interest between the parties such that the plaintiff will act as an effective advocate of the third party's interests." *Id.* And it noted that the D.C. Circuit "ha[d] found that a vendor who is prevented from selling his product to third parties by *any* unlawful regulation, may challenge that

7

regulation on the basis of 'the vendor-vendee relationship alone.'" *Id.* (citation and other internal quotation marks omitted).

The facts of *Lapelletier* are admittedly close to the facts here. But *Lapelletier* does not dictate a finding of third party standing here for two reasons. First, *Lapelletier* was decided prior to *Kowalski*, in which the Supreme Court made clear the limited utility of hypothetical or future relationships for purposes of showing a "close relationship." That decision draws into question the continued vitality of the *Lapelletier* Court's conclusion that third-party standing may be based on the "vendor-vendee relationship alone," without further examination. Second, regardless of the state of law in the D.C. Circuit, this Court is compelled to follow the law of the Second Circuit. While the Second Circuit has to date only addressed the implications of *Kowalski* in an unpublished decision, *see Fenstermaker v. Obama*, 354 F. App'x 452 (2d Cir. 2009), that decision is instructive as to the effect of *Kowalski*. In *Fenstermaker*, the Court rejected the plaintiff's assertion that he "satisfie[d] the 'close relation' prong of third-party standing based on a 'vendor-vendee relationship," *id.* at 455, concluding that plaintiff's "third-party standing is foreclosed by [*Kowalski*], which declined to allow lawyers to premise third-party standing on relationships with hypothetical future clients." *Id.* As the *Fenstermaker* Court did, this Court must conclude that *Kowalski* forecloses Gelb's assertion of third-party standing, despite the D.C. Circuit's conclusion in *Lapelletier*.

## II.      Redressability Requirement

Even assuming Gelb could satisfy the requirements of prudential standing, he cannot satisfy the requirements of Article III standing, as he does not establish that his alleged injury-in-fact can be redressed by a favorable decision.

To establish redressability, a plaintiff must show that "it is likely, rather than 'merely speculative,' that the injury will be redressed by a favorable decision." *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 142 (2d Cir. 2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (describing the same standard). A "plaintiff need not demonstrate with certainty that [his] injury will be cured by a favorable decision, but [he] must at least make a showing that there is a 'substantial likelihood that the relief requested will redress the injury claimed.'" *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n. 20 (1978)). Redressability also requires "'that the plaintiff who seeks to invoke judicial power' be in a position to benefit in some personal way." *E.M.*, 758 F.3d at 450 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976)). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Coal. of Watershed Towns v. U.S. E.P.A.*, 552 F.3d 216, 218 (2d Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998)).

Here, Gelb does not show a non-speculative likelihood that the injury he alleges—the loss of business opportunity, due to potential customers being unaware of their outstanding bonds—would be remedied by a favorable decision. If, as Gelb alleges, the Owners have not received constitutionally proper notice, then the remedy to that injury would be to provide those Owners with notice. As Gelb himself stated at a status conference held April 13, 2016, he does not seek any publication of the Owners' names or assets. Thus, even if Gelb prevails, he himself may not end up with the Owners' names. Under that scenario, Gelb cannot claim that there is a "substantial likelihood that the relief requested will redress the injury claimed" by him, *E.M.*,

758 F.3d at 450, nor can he claim that he himself would be "in a position to benefit in some personal way from the relief." *Id.* Even assuming that FRBNY is holding the property of the Owners, that the Owners have not received sufficient notice, and that the Court ultimately orders FRBNY to provide the Owners further private notice, then in order for Gelb to benefit, the Owners would, first, have to decide to attempt to claim the property; second, decide to seek out a property recovery service; and third, seek out Gelb's particular service. This chain of events is speculative, to say the least. Indeed, the D.C. Circuit in *Lapelletier* noted that only a remedy of public disclosure in that case would redress the plaintiff's injury, because if a court ordered only private notice to the depositors, the plaintiff "would not learn the names of the parties with unclaimed deposits and, as a consequence, he would remain unable to contact those individuals in the hope of soliciting business from them." *Lapelletier*, 164 F.3d at 43. There, the Court found the plaintiff to have standing, specifically because the plaintiff requested *public* disclosure of the names, *see id.*—the very remedy that Gelb disavowed at the status conference in April.

Gelb does, in his complaint, request that the Court "[o]rder defendants to make the Bond Loan Records available to plaintiff immediately." (Compl. ¶ 74.) This request predated the Court's dismissal of Gelb's other claims, and Gelb is vague now on the exact scope of relief requested. (*See* Def.'s May 2, 2016, Ltr. 2.) Assuming he still seeks the private release of the Owners' names to him, then this relief, if ordered, would be more likely to redress Gelb's injury than would an order for private notice to the Owners. It would at least allow Gelb to directly contact the Owners and offer his services. (*See id.*) But this contemplated relief faces a different hurdle: it is untethered from the only surviving claim in this action—the claim that the *Owners'* due process rights have been violated. Giving Gelb access to the owners' information does nothing to remedy the allegedly defective notice given to the Owners. As the Second Circuit has

explained, "The interest asserted for standing purposes must consist of obtaining compensation for, or preventing the violation of a legally protected right." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110–11 (2d Cir. 2008) (quoting *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000)) (alterations omitted).

In sum, if the relief requested by Gelb is solely that notice be given to the Owners without any public release, then he does not show "a non-speculative likelihood that the injury [suffered by Gelb] can be remedied by the requested relief." *W.R. Huff*, 549 F.3d at 106-07. If, on the other hand, the relief requested by Gelb is that *he* be given the owners' names, then he does not show how that at all relates to the alleged injury to Owners, who have the only surviving claim in this action. That too is insufficient, as "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 107 (1998). Thus, even if Gelb satisfied the "close relationship" requirement for third-party standing, his suit would still have to be dismissed for lack of Article III standing.

## CONCLUSION

For the foregoing reasons, Gelb's remaining claim must be dismissed for lack of standing. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:  August 29, 2016
        New York, New York

_____
ANDREW L. CARTER, JR.
United States District Judge